Appeal from the Trial Courts Order granting summary judge to Mr. Kimble v. Eugene Police Dept. Isn't somebody who is in custody required to submit, even if he believes that the officers are being rude? I mean, he might have a dispute later as to whether the way the evidence was obtained was proper, but isn't he required to submit to the authority? And if they say, we will take your underwear, he has to give it up. And I realize it doesn't apply to anything painful or highly intrusive, but we can't have people in custody fighting with the police about whether they're being rude or polite or, you know, if the police get the evidence in a way that's unlawful, then the remedy is suppression. I think generally the rule is that a person being arrested, if it's a lawful arrest, has to submit. I believe that applies. It's clearly a lawful arrest. There was plenty of evidence from which they could deduce probable cause that he had had sex relations with a 13-year-old girl. So no doubt about that. So they had him dead to rights. They had him at the police station, and they decide, we're going to get some evidence from you. Maybe they were right. Maybe they were wrong. Maybe they were, but, you know, they weren't, I mean, they were pursuing a lawful objective. Maybe not through, I mean, we can dispute whether the means that they used were lawful, and maybe they just needed to get a warrant or whatever. We can dispute that question. But what they were trying to achieve is get evidence, which is a legitimate police function. And I am just wondering, in situations like that, isn't somebody in police custody required to submit rather than put up a fight and get into a scuffle with the police and endanger himself, endanger their officers? And, you know, who knows? Then we have the whole situation of Fustrav John, why he got hit in the face. Well, first let me say that the question of resistance in this case is really irrelevant, but I'll get to that in a minute. Well, it's irrelevant to maybe some of the claims, but it's not irrelevant to the punch in the face. Because the punch in the face turns on a dispute as to whether he was punched in the face in order to get him to submit to the seizing of the evidence, you know, police story or his story that they punched him in the face after they had him down because they were racist or mad at him or, you know, whatever. That's what he gets down to. But the fact of the matter is the reason that when a scuffle or punches were being traded is that he, when they said, you know, you turn over your underwear, he didn't just turn over his underwear. And when they said, we're going to go comb your pubic hair for evidence of crime, he didn't say, okay, you got me, you know, and submit. But what the law says, Your Honor, is that a person in custody, a person being arrested by an officer has the right to offer limited resistance if that is provoked by the officer's bad faith or provocative conduct. What we have here, according to Mr. Kimball, remember, this is the summary judgment standard in his affidavit. What he says is that when he was told that the officers wanted a pubic hair sample, among other things, and I would agree with respect to some of the things, it might not be relevant. But one of the things was the officer said, well, we'll just take them from your black ass. I think it was underwear that he was saying about. He was also talking pubic hair, Your Honor. I mean, they asked him for the underwear. Instead of saying, okay, you got it, and taking them off or letting them take them off, he said, no, come and get them. And then, according to him, he says, we'll take them from your back, and in that case, we'll take them from your black ass. I mean, that was the reply after he refused to hand them over. I understand that, Your Honor. And so the resistance wasn't caused by anything that even he claims was done provocative by the officers. The officers said, we want to get this evidence. Understood. But the cases are full of examples where officers overcome resistance without resorting to a punch in the face. Counsel, I'm trying to get straight. There are two different time frames that I see. Correct. Are you making a claim? Maybe the answer is yes to my disjunctive. Are you making a claim to the actions taken to subdue him when he refused to hand over the stuff? Or are you making a claim that they attacked him after he was already handcuffed and totally subdued? Both. Both. There's evidence in the record that the beating inflicted by Detective Brazile continued after Mr. Kimball was handcuffed, subdued, and on the ground. So you're saying they could not take action against him. I think this is what you're saying, Judge Kaczynski. You're saying they couldn't take action against him to force him to turn over the stuff. They couldn't attack to do it because there might have been a nicer, sweeter way to go about it. But also, in addition, once he was subdued and down on the ground, et cetera, et cetera, et cetera, they certainly couldn't keep hitting him. Correct. And that's why the question of resistance. Well, it's A I'm having trouble with. I'm not having too much trouble with B. I'm having trouble with A, though. Because, Your Honor, when you have five officers in a secure facility with someone who's not going anywhere, who cannot have a weapon, none of the officers say threatened him. There's not one statement in any affidavit saying that Mr. Kimball was actually trying to strike at them or being combative, as opposed to resistance. When you have that situation, it is constitutionally impermissible to punch a person in the face, inflicting the type of injury that was inflicted here. These are five police officers with one suspect. They can — What were they supposed to do to get the evidence that they thought they weren't able to get? Obtain a search warrant. Huh? They can arrest him and take him to the jail. That speaks to a different question. Let's stay right there. Assuming for the moment — I understand you've got a claim with regard to getting a search warrant. But assuming for the moment that the officers are justified in going in and they need to get this underwear and get the evidence from the hair, and he's resisting. It's one thing to say, look, once he's handcuffed and chained up and so forth, he can't go up and hit him upside the head. It's another thing when he's resisting to be able to do what you have to do to get the underwear. So not trying to say you don't have an argument with regard to the search warrant in your 1983 action there. What is it about, A, in Judge Fernandez's version, that is, when you're trying to get the underwear from him? What is it about the officer's conduct that's improper when he's resisting? Well, trying to — I'm sorry. I'm not following your question entirely. We're breaking this into pieces. Right. You have a claim with regard to the failure of the search warrant. You have a claim potentially if, in fact, they had him subdued and then they decided to go up and knock him cold. Right now we're talking about the part of the physical conduct or the physical activity that relates to getting the underwear off of him when he's resisting. And you can tell us, yes, there are five officers not going anyplace, but they still have to get the underwear off of him and get whatever evidence they can find from the combing of the pubic hair. Well, he has to be restrained. He has to be handcuffed. The officers can do all those things. But they didn't do that here. They didn't go through the other, less harmful methods. Detective Breazeal, with no threat from Mr. Kimball, simply punched this man in the face. And if there is a line to be drawn — That's not so, even according to your client's statements. What he said is they came at me. They grabbed my — I said, you know, you come and get it. They grabbed my arms. I twisted around so they wouldn't break my arm. And so it got into a scuffle. And that's when this punching occurred. After he got punched, he submitted nicely and they took it from him. Now, that's the sequence. That's based on your own client's representation as to what happened, which doesn't differ that much from what the police are saying. Now, what is he supposed to do? He's there. He's handcuffed. He's saying, come and get it. He sits down to keep him from — to make it hard for them to get it. What is it that they were supposed to do? Your Honor, five officers can twist a man's arms behind his back and get him handcuffed. They can take him to the ground. He's kicking? He is — He was not kicking, Your Honor. Resisting? According to Mr. Kimball, he was not kicking. According to Mr. Kimball, he was not resisting. He was attempting to sit on the floor. But even if — even if Your Honor doesn't buy that, Mr. Kimball says in his affidavit that the beating continued after he was on the ground, after he was subdued, after the handcuffs were on. Detective Breazeal struck him repeatedly with his fists and with his knees. Regardless of what one thinks about the punch in the face, which we would assert is constitutionally impermissible under these circumstances and far more severe than the situations and the cases that we've cited to the Court, particularly the Lalonde case, for one reason, that this inflicted a lasting injury that required Mr. Kimball to go to the hospital. There is objective proof of an actual injury here inflicted by Detective Breazeal. Let me ask you another question. Assuming for the moment, and never mind their policies, if I understand it correctly, you don't need a search warrant to take a guy's underwear when you take him into custody. I should think the combing for the pubic hairs of the victim is kind of like taking his underwear. It's property that he's carrying around with him, perhaps. So, I guess you could say that. You shouldn't need a search warrant for that, I should think. I guess that gets you down to the plucking of a hair, and let's assume for the moment, just assume for the moment that that was solely for the purpose of checking it for bodily fluids of the victim. Okay? Okay. Anything wrong with that? If that was the evidence, I think that would be a different case. If that were the evidence, then they could just take it, right? They wouldn't need a special search warrant for that. Is that correct? I believe that's correct. Now, only if they were plucking it for something like DNA tests on him would they need a search warrant. Is that right? Or comparison with pubic hairs found on an alleged victim. Comparison, yeah, for comparison. But if they're doing it to make sure they get fluids, then that's okay, right? I mean, I think that's what you said. So the question here, then, I take it from your standpoint would be, where is the evidence that they were taking it for any particular reason as opposed to just taking it? Is that right? Well, Your Honor, I believe what they said was that they were – they combed the pubic hair for evidence from the victim. Because that's just – he's just carrying property around. He's just carrying it in an unusual way. Right. So now we're down to plucking. With no justification for that plucking. And if they felt that there was a need, then to do something that extreme, that requires a search warrant, which they did not have. Which, according to the city – What if they had snipped rather than plucked? I don't believe that would make a difference. Certainly less painful. But to the analysis, no difference. Well, slightly. I mean, slightly. Plucking hair isn't excruciating. But I thought what you were answering was just an answer to the question. What if they got the pubic hair because it contained moisture? It contained fluid. They could analyze fluid on the pubic hair that might contain the bodily fluids of the victim. Correct. So that would be the kind of thing that would deteriorate over time. And whether they plucked it or they cut it, what they were trying to do is, just like combing, they were trying to get evidence that would evaporate. I mean, we don't know why they took it. There's no evidence on this. What we know is that they did take it, and they took it without a warrant. They didn't have any exigent circumstances that are in the record. Well, if they thought that the pubic hair contained bodily fluids that would evaporate with the passage of time, the victim's bodily fluids might evaporate with the passage of time, then they did have an exigent circumstance in getting it, didn't they? Your Honor, if they took the underwear, supposedly that was one of the reasons they took the underwear without a warrant. Well, the underwear might have fluids that might leach off his body or his pubic hair, but obviously the pubic hair would have come into close contact with the victim's pubic hair, and the victim's bodily fluids. Right. Your Honor, I am running out of time. I would like to reserve some time for rebuttal. I don't want to not answer your question, but the focus here has to be on whether or not summary judgment was appropriate, whether the officers were entitled to qualified immunity under these circumstances. Assuming that what Mr. Kimball said is true, not what the officers say is true, not on things that are outside the record, assuming what Mr. Kimball says is true. But Mr. Kimball can't really speak to what purpose they took the hair for. It's not something in which he's competent to speak because he's not a witness. He can tell us it was taken, but nobody disputes it was taken. That's true. Taken without a warrant, Your Honor. It is the city's burden. Okay. All we're asking for is for Mr. Kimball to have his day in court, and so we would ask that the district court be reversed. He didn't like the last day in court he had? I don't believe he truly had his day in court, Your Honor. Thank you. Thank you. May it please the Court. My name is Yen Schmidt. I'm here on behalf of the City of Eugene and its police officers. I want to just make two points. I want to address what I think is the most problematic fact in the case in terms of the grant of summary judgment on the excessive force case. If you view the evidence in the light most favorable to Mr. Kimball, Mr. Kimball states in his affidavit that he was punched after he was handcuffed, which, of course, the officers dispute, but we have to assume as true on appeal, viewing the evidence in the light most favorable to the plaintiff. I believe that Judge Panner's approach to this, and I believe the approach that is correct, was to look at the totality of the circumstances and conclude that even if it were true that he was punched in the face after handcuffs were on him, as difficult as it is to defend that under the circumstances of this case, a police officer would not know that that conduct was clearly unlawful for two reasons. One is the fact that even under the best of circumstances for Mr. Kimball, this was a scuffle involving a number of people, and as Judge Panner pointed out, you have to look at what the police officers did from their perspective at the time. And secondly, the undisputed evidence is that Mr. Kimball suffered what turned out to be a relatively minor injury. He suffered a bruise to the left eye socket, scratched cornea, and some inflammation of his eyelid. And so even if he — I mean, you get a few free kneeings? No, but — You get a few free kneeings as long as you don't cause any visible damage. Is that the concept? Well, I wouldn't put it that way because I certainly don't want to encourage police officers to think that way. But the reality of the situation, I believe what both this Court and the U.S. Supreme Court has emphasized, is it's easy for us in this courtroom to second-guess what the officers did, but we try as best as possible to give them some leeway within a realm of reasonableness to actually use excessive force as long as they reasonably could have believed under the circumstances at the time that it was not. And I believe that's what you have here. Well, but can you, in light of the law, can you possibly believe that it's not excessive to pummel, kick, knee, et cetera, somebody who is subdued, handcuffed, lying there on the ground, and you thought, well, you know, a good kick, then we won't have to fight him again later because a couple of good kicks will straighten him around? No. I don't think that's permissible. But I also don't. I mean, is it even qualifiably immune? No. But I also don't think that's the record that's before you because I don't think it's fair to say, given the undisputed evidence of his injury, that he was pummeled, kicked, and kneed repeatedly. I believe what Mr. Kimball says. How about once? You get one free shot. I think it depends on the circumstances. The guy, he's he's all I can do is read what what the thing says. Hit me in the face more than one time and need me while cursing me even after I was handcuffed on the floor. So he's handcuffed on the floor. And then he later on says, even after I was subdued, this was done. So there he is, handcuffed, subdued on the floor. He's finally given up and they give him one more shot. That's OK. If that's true, if that's true, given the injury he suffered and given the context of this scuffle, I would say that he put a reasonable police officer on the scene would not necessarily know that that was clearly unlawful. I think it can be a police officer when I'm completely subdued. I mean, let's say everything's finished.
judges: Kozinski, Fernandez, Clifton